McFarland, J.,
delivered the opinion of the court..
Under a bill for that purpose, certain lands belonging to the heirs of Bland were, on the 19th of May, 1860, sold for partition, and bought by Wm. Joyner, on a credit of ten years. The title was vested and a lien retained to secure the payment of' the note. Some time afterward Joyner sold the land to Peyton, and Peyton’s note, with Hunt as surety, corresponding in date and amount to Joyner’s, was, by order of the court, substituted for the latter. Pey-ton then sold and conveyed the land, by deed with general warranty, to the complainant and two others. The complainant has paid the entire price to Peyton, and has become the owner of the shares of his co-purchasers. He had actual notice of the lien for the unpaid note to the clerk and master. Hunt, the surety of Peyton, agreed in writing with the complainant, that if he was compelled to pay the note to *347 the clerk and master, he would waive his right to-be substituted to the lien upon the land, and would not eomé upon the land to be re-imbursed. Peyton has died. The note to the clerk and master, for the purchase money, fell due on the 19th of May,. 187Ó, before the bill was filed, and is still unpaid.
The complainant filed this bill on the 26th of August, 1870, stating these facts, and charging that Peyton & Logwood, a firm of attorneys at law, represented the heirs of Bland, and had notice of his purchase, aud made no objection, but agreed to it. That Peyton, one of the firm, was the same person who bought from Joyner and sold to the complainant. That since Peyton’s death, Logwood has announced his purpose to make the unpaid purchase money out of the land in the first instance; whereas the debt should be made first out of the estate of Peyton and his-surety, Hunt; and this is the relief prayed for. The other material allegations of the bill will be hereafter referred to.
1st. It is very clear that the demurrer was properly sustained as to the defendant, Logwood. He was only one of the solicitors, having no interest in. the controversy. The only allegation. against him is,, that he said he was going to make the money out of the land.
2d. We think that the demurrer was also properly sustained as to Hunt, the surety of Peyton. He agreed that if he should be compelled to pay the note, to the clerk and master, he would waive his. right to a lien upon the land for re-imbursement,
*348 It is assumed in the argument that this was equivalent to an agreement upon his nart that if necessary he would pay the debt and save the land. But this was not his undertaking. It cannot go beyond the terms of his written agreement. He agreed that if ■he should be compelled to pay the debt, he would waive his right to a lien upon the land; meaning, doubtless, to look, in that event, to Peyton for indemnity. It is not charged that Hunt has violated this agreement.
3d. We think it clear that the parties in interest •in the proceeds of the land, some of them being married women and infants, are not affected by any tacit or express consent of their attorneys, Logwood & Pey-toD, to the terms of the contract between Peyton and the complainant, especially as Peyton had purchased the land, and was acting for himself and not his clients.
4th. We further hold that the clerk and master, or the beneficiaries in the fund, should not be embarrassed, or their remedy altered or delayed, by the arrangement under which the complainant purchased the land. Their right and remedy are precisely the same as before, and they cannot be enjoined from taking any steps they may see fit, to which they may be entitled under the law, to collect their debt. They cannot be compelled first to exhaust their remedy against Peyton and his surety; but they may proceed at once, if they choose, against the land. The relation of surety and principal did not exist between the complainant and Peyton. All that can be required of those entitled to the purchase money for the land *349 is, that in enforcing their own rights they must not interfere with the equities of others. But to protect the equities of others, they are not required to lose any right of their own, or to resort to a more expensive, dilatory, or uncertain remedy.
Where a vendor has sold land, retaining a lien for unpaid purchase money, and the vendee has made successive sales of different portions of the same land 'without removing the lien, it has been held, that in equity, as between the successive purchasers, the in-cumbrance should fall upon the different purchasers in the inverse order of time; and that the vendor may, in equity, be required, in enforcing his lien, to observe this order in the sale of the land. See Thompson v. Pyland, 3 Head, 537; Wright v. Atkinson, 3 Sneed, 588: — this, however, without having to adopt any different remedy.
We suppose that it will not be contended that a purchaser of mortgaged property,- with notice of the mortgage, could compel the mortgagee to resort to the personal obligation of the mortgagor, in exoneration of the mortgaged property; yet this is the proposition involved in the present attempt.
But the question remains, whether or not this bill may be maintained against the personal ■ representative of Peyton, to compel him to remove this incumbrance upon the land.
It is certainly true, as a general proposition, that, a purchaser of land, in possession under a deed with general warranty, can have no relief upon the warranty-for defects of title, before eviction.
*350 But this bill charges that, in addition .to the covenants in his deed, Peyton gave his solemn assurance and promise that he would pay the note to the clerk and master at maturity, and thus remove the incum-brance; and that this promise was required before the purchase from him was made.
He having received the full price agreed to be paid him for the land, ought, in equity, to pay off the incummbrance; and he ought to do so without delay, whether he had promised specially to do so or not. For so long as this incumbrance remains upon the land, it is an embarrassment upon the complainant’s title, which, as between him and Peyton, is unjust, and in violation of Peyton’s agreement to remove it, as alleged in the bill.
Ought not Peyton to be required specifically to execute this agreement? Is any other remedy adequate and complete?
Peyton’s obligation to pay the debt is not secondary, or dependent upon any condition; but is primary and absolute. Judge Story lays it down:
“A general covenant to indemnify for the purchase money due for land, upon an assignment thereof to an assignee, although it sounds only in damages, will be decreed to be specifically performed, upon the principles of quia timet.” 2 Story’s Eq. J., sec. 785.
In Thompson v. Pyland, 3 Head, before referred to, it was held, that the purchaser of the one fraction of a tract of land upon which there was a lien for purchase money, had the right to come into equity, to have the lien removed by enforcing it upon the *351 balance of the tract which had been subsequently sold to other parties; and that he was not bound to wait until the original vendor, who held the lien, had taken any steps against him, but might seek the aid of a court of equity, by a bill quia timet to prevent the anticipated injury.
The complainant ought not to be required, as between him and Peyton, to remove this incumbrance himself and resort to his action against Peyton. Nor should he be required to .suffer the danger of loss resulting from Peyton’s delay to remove the incumbrance beyond the time promised — the maturity of the note.
Shall he be compelled to lie by and permit this incumbrance to remain on his land indefinitely?
Upon this view, we think the bill is maintainable against the personal representative of Peyton. And for this purpose, the clerk and master, to whom the note in question is payable, is a necessary party. But he and the parties he represents are not to be delayed, or prevented from taking any steps they may desire to collect their debt. He ,is only a party for the purpose of enabling the complainant to compel Peyton’s representative to do him justice; and he is to be protected from costs.
The decree sustaining the demurrer as to all the parties, except the personal representative of Peyton and the clerk and master, will be affirmed with costs, and the injunction dissolved; but as to them it will be reversed, and remanded for an answer; and the costs of this court will be paid by Peyton’s adminis- ■ mi or.
*352 We think that the question as to the validity of the action of the court in substituting Peyton's note-for Joyner’s, is not for the present material.
Turney, J.:
I think that the demurrer to the entire bill is well taken. Peyton was already bound by his contract of pui’chase, to pay the purchase money. His assurance to the purchaser from him gave to that original obligation no additional strength or sanctity.
If the assurance was the inducement to take the deed with the covenants contained, to be effective it should, in my opinion, have been embraced in the covenant; and this not being done, I am not able to understand how the mere verbal promise to pay a debt evidenced by note can relax the general rule, that a purchaser in possession under a deed with general warranty, can have no relief upon the warranty of title for defects of title before eviction; especially when the warrantee has full notice of the incumbrance, and there is no fraud.
A petition for rehearing having been filed, it was disposed of on the 7th of November, PeeemaN, J., delivering the opinion of the court:
We can see no reason for changing the majority opinion heretofore delivered. Peyton has received the entire purchase money; and he did so upon a solemn assurance that he would pay the original purchase money and remove it as an incumbrance from the land. Hunt, by his waiver, shows clearly that he *353 understood that he or Peyton was to pay this debt and exonerate the land; for he agrees that if he, ■ as surety, has it to pay, he will waive his rights as against the land, by substitution, for his reimbursement. The clerk and master is, by this decree, turned loose to make his money by a sale of the land to pay the original purchase money, — the very thing Peyton had promised to pay. Surely this is such a case of peril to the right of complainant, as will authorize him to compel the parties to comply with their agreement, and thus save him from the probable loss of his land, leaving him only an action at law on his warranty upon eviction, to recover his purchase money with interest. Good faith requires the relief that has been awarded, and we do not see that the parties can complain that they are compelled to do what they have promised, because they are liable also to an action for breach of warranty
Dismiss the petition.